BENTLEY MACHINERY, INC. v. PONS HOSIERY, INC., J. P. PONS AND STANLEY PONS

No. 7625SC893

(Filed 15 June 1977)

1. **Bills and Notes § 16— amount of deficiency — refusal to strike alleged hearsay testimony**

   In an action to recover upon the guaranty of a note given for the purchase of machinery, defendants were not prejudiced by the court's refusal to strike as hearsay the testimony of plaintiff's witness as to the amount of the deficiency where other competent evidence enabled the court to calculate with mathematical certainty the amount of the deficiency and supported the court's findings with respect to the deficiency.

2. **Uniform Commercial Code § 15— exclusion of implied warranties — no breach of express warranty**

   In an action on a note given for the purchase of machinery, defendants were not entitled to an offset for breach of warranty where

the purchase contract excluded any implied warranty of merchantability and fitness as permitted by G.S. 25-2-316(2) and the evidence supported the court's finding that defendants failed to prove that plaintiff breached its express warranty that the goods were free from defects in materials and workmanship.

APPEAL by defendants, J. P. Pons and Stanley Pons, from *Ervin, Judge.* Judgment entered 20 January 1976 in Superior Court, CATAWBA County. Heard in the Court of Appeals 11 May 1977.

Plaintiff, Bentley Machinery, Inc., instituted this action to collect the balance due on a note executed by defendant, Pons Hosiery, Inc., to cover the purchase price of certain machinery sold to Pons Hosiery and to enforce the agreement of the individual defendants, J. P. and Stanley Pons, guaranteeing payment of the purchase price. Defendant Pons Hosiery filed no answer, but the individual defendants filed an answer wherein they alleged among other things:

". . . [S]hould the Court hold said defendants liable for the amount prayed by the plaintiff that the defendants be given and allowed a set-off and/or credit for:

(a) All payments previously made on said machinery by defendants collectively.

(b) The reasonable resale value of said machinery since the plaintiff seeks to recover possession of said machinery.

(c) All expenses incurred by said defendants for repairs and/or additions to said machinery including but not limited to:

(1) Replacement of sock separation unit;

(2) Replacement of motors and drivers.

(d) Credit for returned sock separator which was defective.

(e) Any and all other lawful credits and setoffs to which the defendants are entitled."

While the action was pending Pons Hosiery filed a petition in bankruptcy, and the plaintiff repossessed and sold the machinery. With the consent of the parties the court entered a

partial summary judgment on 28 April 1975 wherein the court stated that the only issue for trial was the amount of the individual defendants' liability under the guaranty agreement.

At the trial, before the judge without a jury, plaintiff offered evidence tending to show the following:

In 1973 defendant Pons Hosiery purchased from plaintiff 40 sock knitting machines for a total purchase price of $453,-575.30. Pons Hosiery paid $23,640 of the purchase price and executed a promissory note for the balance. Under the terms of the promissory note, Pons Hosiery was to make fifty-nine monthly payments of $10,003.88 and then one payment of $10,003.75. Defendants, J. P. and Stanley Pons, signed an agreement guaranteeing payment of the purchase price of the machines. The purchase sales contract, promissory note and security agreement were all admitted into evidence. Donald M. Collins, plaintiff's regional sales and service manager for North Carolina, testified that Pons Hosiery made its last payment on the machinery in June, 1974, and that at that time the gross amount owed on the note was $530,205.51 and that the net principal balance was $397,039. Plaintiff incurred expenses of $4,725.72 in repossessing the machinery on 25 January 1975. The forty machines were sold to Mayo Hosiery for $400,000. Plaintiff incurred expenses of $12,393.75 in installing the machinery at Mayo's plant. Plaintiff sold the forty "separators" for $55 each.

Defendants offered evidence tending to show the following:

Pons Hosiery purchased from plaintiff forty sock knitting machines together with "separators" which separate the socks produced by the machinery. The separators malfunctioned continually in that they did not separate the socks but twisted them. As a result of the malfunctioning separators one or two machines were inoperative for several hours a day and Pons expended $1,000 in labor and parts in an attempt to solve the problem and had to hire three extra fixers at a weekly salary of $300 and three extra knitters at the hourly wage of $3.00 to $3.50. The hydraulic drive units of the knitting machines were defective and Pons Hosiery suffered $5,000 to $6,000 in damages as a result. The supports for the feed striper bracket assembly were too weak to support themselves, and Pons Hosiery had to repair them at a cost of $25 to $30 per machine. The

Machinery, Inc. v. Hosiery, Inc.

cables of the knitting machines repeatedly slipped out of the nipples in which they were secured causing damage to the machines. The total damage caused by this problem was $18,000-$19,000. Ordinarily a yarn rack is included with each knitting machine of the type sold to Pons Hosiery. Plaintiff agreed to give Pons Hosiery a $140 credit in lieu of each rack, but never gave them the credit. A collection can is standard equipment with the type machine sold to Pons Hosiery, but Pons Hosiery did not receive any cans and had to buy forty used cans at $17 each.

The trial judge made detailed findings of fact with respect to plaintiff's claim and included therein the partial summary judgment entered on 28 April 1975. The trial court concluded that defendants were indebted to the plaintiff in the amount of $31,988.71, and that plaintiff was not indebted to defendants in any amount on defendants' claim for a setoff.

From the judgment that plaintiff recover from defendants $31,988.71, defendants appealed.

*Cagle & Houck by Joe N. Cagle and William J. Houck for plaintiff appellee.*

*McMurray, Triggs & Hodges by C. Gary Triggs for defendant appellants.*

HEDRICK, Judge.

[1] Defendants contend the trial court erred in denying their motion to strike the testimony of the witness Collins regarding "any deficiencies on the grounds the testimony was hearsay and therefore not admissible." Assuming *arguendo* that this question is properly supported by an assignment of error and exceptions duly noted in the record, we are of the opinion that the court committed no prejudicial error, since the promissory note, which was properly admitted into evidence, evidencing the purchase price, interest rate, amount of monthly payments, and total monthly payments, coupled with the fact stipulated in the consent order (partial summary judgment) that, "The Defendant Pons Hosiery, Incorporated has not made any payment to Plaintiff under the terms of the Note and Security Agreement since June of 1974 . . . , " enabled the court to calculate with mathematical certainty the amount of the deficiency. There is plenary competent evidence in the record to support the court's

findings of fact with respect to the amount of the deficiency, and these findings support the order that defendants are indebted to plaintiff under the guaranty agreement in the amount of $31,988.71.

[2] By assignments of error 9 and 14, defendants contend the court erred in finding and concluding that defendants are not entitled to recover on their offset for damages resulting in plaintiff's alleged breach of warranty. In their brief defendants simply argue that the evidence discloses that the plaintiff breached the implied warranties of merchantability and fitness for a particular purpose and the express warranty that the goods were "free from defects in materials and workmanship."

G.S. 25-2-316(2) in pertinent part provides as follows:

". . . [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

The purchase sales contract in the present case contains the following conspicuous provision:

"Except for the warranty of title, no warranty of merchantability, fitness, nor other warranty (whether expressed, implied or statutory) is made by the seller, except that it warrants the goods to free from defects in materials and workmanship in normal use and service. . . ."

Construing this provision in light of G.S. 25-2-316(2), we are of the opinion that the contract excluded any implied warranty of merchantability and fitness for a particular purpose, and that the only warranty made by the plaintiff was the exclusive express warranty that the machines were free from defects in materials and workmanship in normal use and service. The evidence supports the court's finding that defendants failed to prove that the plaintiff breached this exclusive express warranty, and the finding supports the conclusion that defendants

are not entitled to recover any amount from plaintiff as an offset to its claim.

Affirmed.

Chief Judge BROCK and Judge MARTIN concur.